SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
----------------------------------------------------------------X
HYACINTH SIMMS,

                                  Plaintiff,

                                 -against-

JP MORGAN CHASE BANK, TOWER GROUP, INC.,
MORANT INSURANCE AGENCY INC.,
AFFILIATED ADJUSTMENT GROUP LTD.,
ASSURANT PROPERTY ADVANTAGE A/K/A
ASSURANT SPECIALTY PROPERTY'S LENDING
SOLUTIONS GROUP, C.J. RUBINO & COMPANY, INC.,
MSW ADJUSTMENT GROUP, INC.,
DG CUSTOM BUILT HOMES & REMODELING,

                                  Defendants.
----------------------------------------------------------------X

**Index No.**

**COMPLAINT**

Plaintiff, Hyacinth Simms ("Simms"), by her attorney Frank Wharton, for the Complaint against the defendants, states and alleges:

1. Simms is a resident of the County of Nassau, State of New York, with a principal residence at, 624 Powells Lane, Westbury, NY 11590 ("624 Powells"). Simms is the title owner of 624 Powells and resided at 624 Powells with her family commencing in March 1986. In August of 2008, 624 Powells was damaged by an electrical fire. Immediately following the fire, Simms and her family took interim residence at 345 Parkway Drive, Westbury, New York ("345 Parkway") pending the processing of insurance claims and the repair and restoration of 624 Powells.

2. For one year following the fire, insurance coverage paid for the Simms's interim housing accommodations at 345 Parkway. Once the insurance carrier stopped paying for Simms's temporary housing, Simms paid rent in the sum of $3,200 monthly as plus utilities, as well as the

1

624 Powells mortgage in the amount of $4,881.67 with Chase as the mortgagee. To this day, however, the repairs to 624 Powells made necessary by the fire are not completed.

3. Defendant, JP Morgan Chase Bank ("Chase"), is a banking corporation authorized to conduct business in the State of New York. Chase is the mortgagee in connection with a mortgage financing transaction between Simms and Chase; and Chase was the mortgagee at the time of the fire at 624 Powells in August 2008. In furtherance of its position as mortgagee, Chase required that Chase's Insurance Claim Procedures for the processing and handling of fire claims must be adhered to in connection with the Simms Home Mortgage Loan #0060267218 ("mortgage"), and with Chase Tracking Number 2961870.

4. By a Chase letter to Simms dated April 5, 2011, Chase delineated and acted thereby to explain Chase's process for handling insurance claims by its Loss Draft Procedures Process ("loss draft process"). The loss draft process is a process by which Chase required and retained control of the processes in connection with Chase's acquisition and then distribution of insurance claim funds. The loss draft process includes oversight by Chase as to the acceptability of the site work, and installment payments to contractors and suppliers of the insurance claim proceeds received by Chase from the Simms insurance carrier, by manner and methods satisfactory to Chase solely; and which insurance proceeds Chase retained possession and control of. By its loss draft processes, Chase undertook as the lien holder in possession of the insurance proceeds, to monitor the repair process and manage the disbursement of the insurance funds. Attached here is a copy of that April 5, 2011, Chase letter with its Loss Draft Procedures Process and Required Documents statements attached and included thereto. *(Exhibit T)*

THIS PORTION IS INTENTIONALLY LEFT BLANK.

5. Because the insurance claim in connection with this action is in excess of $20,000 Chase required of plaintiff the following procedures regarding plaintiff's fire insurance claim and Chase's handling of the insurance claim check from plaintiff's insurance carrier: Chase required that plaintiff send the indorsed insurance claim check to Chase, which Chase would then deposit into a restricted escrow account, and release the initial disbursement of $10,000 or one third of the initial claim amount, whichever is greater, payable to all borrowers, any payees listed on the original insurance claim check, and any contractors. That ten days prior to the expected completion date of repairs plaintiff was required to contact Chase to request a property inspection. That within three business days from Chase receiving all of the following documents, Chase would release the remaining claim funds payable to all borrowers, any payees listed on the original insurance claim check, and any contractors if applicable: a) Insurance adjuster's report or Contractor's estimate. b) Mortgagor's affidavit. c) Contractor's lien waiver. d) IRS form W-9 (when using a third party to complete the repairs). e) Property inspection results of fifty percent or more completion of repairs. That ten days prior to the expected completion date of repairs, Simms should contact Chase to request a property inspection. That within three business days of receiving property inspection results of 90-100% completion Chase will release the remaining insurance claim funds.

6. The Chase required documents were: **Adjuster's report or estimate**: An adjuster's report or estimate is an itemized list of damages to the property provided by the insurance company. The adjuster's report outlines the total amount allotted for each portion of the claim settlement. **Contractor's estimate and/or worksheet**: a contractor's estimate is the written proposal that the contractor will provide itemizing the total cost to repair plaintiff's home. **Mortgagor's Affidavit**: The mortgagor's affidavit is a document, which must be signed by at

3

least one borrower on the loan that acknowledges plaintiff's intent to repair the damaged property. This document also confirms that all bills will be paid in conjunction with the repairs to the property, and that there is no possibility that a lien could be placed on the property due to unpaid debt for labor or materials. This form must be notarized prior to submitting it to Chase. **Conditional Waiver of Lien**: The conditional waiver of lien is completed by the contractor confirming that the contractor will waive any claims of lien conditional upon receipt of payment in full for their labor and materials. **IRS Form W9**: The Internal Revenue Service (IRS) regulations require mortgage companies to report payment of insurance proceeds to contractors. As a result, Chase requires a completed W-9 form prior to issuing disbursements including your contractor as a payee. If you are self-contracting, this form is not required.

7. Defendant, Tower Group, Inc. ("Tower"), is an insurance company duly authorized to conduct business in the State of New York. Simms held a policy of insurance covering 624 Powells with a policy period of September 20, 2007, to September 20, 2008. The Policy No. is HOP2125321. Following the fire damages to 624 Powells, Simms made insurance claims to Tower based upon the Simms policy of insurance with Tower.

8. Defendant, Morant Insurance Agency Inc. ("Morant"), is an insurance agent/agency duly authorized to conduct business in the State of New York. Morant is a necessary party to this action because, upon information and belief, Morant is an agent/agency for Tower, and Simms obtained the policy of insurance from Tower by Morant.

9. Defendant, Affiliated Adjustment Group Ltd. ("Affiliated Adjustment"), is a corporation duly authorized to conduct business in the State of New York. Affiliated Adjustment is a necessary party to this action because, upon information and belief, Affiliated Adjustment was

4

retained by Tower to provide claim adjustment services to Tower in connection with the fire damages to 624 Powells.

10. Defendant, Assurant Property Advantage a/k/a Assurant Specialty Property's Lending Solutions Group ("Assurant") is engaged in the business of providing property preservation, restoration, and inspection services to residential mortgage servicers and lenders in the State of New York. Upon information and belief, the service(s) provided by Assurant in connection with this case involved inspection of 624 Powells to ensure that the investments of the homeowner and servicer are protected prior to release of insurance funds during the claim repair process. Assurant is a necessary party to this action because, upon information and belief, the services of Assurant were retained by Chase and/or Tower in connection with the processing of the Simms claim regarding the damages and restoration of 624 Powells. To that end Assurant generated an itemization and estimate of the repairs and work to be done at 624 Powells. Upon information and belief, the payment to Chase by Tower of the sums necessary to complete the restoration to 624 Powells was paid in reliance upon the report by Assurant.

11. Defendant, C. J. Rubino & Company, Inc. ("CJ Rubino"), is engaged in real property fire restoration including estimating, appraisals, restorations, and general contracting. CJ Rubino is a necessary party to this action because, upon information and belief, the services of CJ Rubino were retained by Chase and/or Tower in connection with the processing of the Simms claim regarding the damages and restoration of 624 Powells. To that end CJ Rubino generated an itemization and estimate of the repairs and work to be done at 624 Powells.

12. Defendant, MSW Adjustment Group, Ltd ("MSW") is a corporation authorized to conduct business in the State of New York. MSW is a necessary party to this action because MSW completed an inspection and submitted an adjustment report to Tower and/or Chase

5

detailing the required restorative repairs to 624 Powells. The adjustment report provided an aggregate cost of repairs required of $345,322.89. That report was submitted to Tower for approval, and Tower tendered checks to Chase in the aggregate sum of $321,110.03. Chase then in furtherance of its policy retained control of the funds, and released the funds only upon Chase's satisfaction that the repairs and rehabilitation to 624 Powells were satisfactory to Chase. Upon information and belief, the services of MSW were retained by Tower and/or Chase.

13. Defendant DG Custom Built Homes & Remodeling ("DG Custom Built") of, 13 Bay Shore Road, Bay Shore, NY 11706, is engaged in the business of constructing custom built homes, and the remodeling of existing homes/houses. DG Custom Built is a contractor that was retained by Simms to complete the repairs and restoration to 624 Powells. DG Custom Built is not incorporated in the State of New York.

14. On August 22, 2008, a fire that was concluded to have been caused by electrical wiring at 624 Powells, caused extensive property damage to 624 Powells. As a consequence of the fire Simms was unable to reside in her home, and has been residing in temporary accommodations since the fire.

15. Following the tender of the insurance payment to Chase by Tower, the services of DG Custom Built was obtained to repair and restore 624 Powells pursuant to the itemization and appraisal from CJ Rubino. However, the completion of the restoration work by DG Custom Built was hindered and delayed by Chase whom engaged in the practice of release of the insurance funds by installments, and only upon and following an inspection by Chase regarding the progress of the restoration work. So that restoration was delayed on account of Chase's handling of the funds, and the completion of the work was hindered due to the difficulties Chase engendered by its inefficient practices regarding Chase's inspection and release of the required

6

funds. As a consequence, damage to 624 Powells was exacerbated by the unduly lengthy exposure of 624 Powells to the elements.

16. Upon information and belief, Assurant Property was contracted by Tower and/or Chase to inspect 624 Powells following request(s) by Simms for an inspection by Chase. In furtherance of an inspection, Assurant Property issued a report stating that the work was 70% completed. The Assurant Property inspection report also detailed the required completion of damages and work to be performed. The Assurant Property report, however, included critical items it states were required for completion that were not included and itemized in any prior appraisal and work to be done itemization upon which Tower might have relied. The Assurant Property report directed the replacement of roof beams, the pull down of walls that the contractor left old insulation within, replace header on the first floor, first contractor's work needs to be redone, old insulation still showing fire damage, first floor wall is built on top of another wall, and beams in the roof are still charred.

17. As a consequence of the Assurant Report Chase did not release the balance of funds. In any event, however, the amount of funds allocated by Tower and paid to Chase were insufficient to cover the repairs the Chase inspection by Assurant Property demanded. This is so because important items such as the replacement of roof beams were not included in the initial reports which were done prior to the payment of insurance proceeds to Chase by Tower; and, upon information and belief, were not contemplated by Tower in its aggregation of the sums required to be paid in order to repair and restore 624 Powells following the fire.

18. On July 3, 2013, the Village of Westbury ("Westbury") inspected 624 Powells and issued an inspection result dated August 26, 2013. The Westbury result found that: "1.) Due to water penetration of the structure all drywall should be removed and all framing members inspected by

7

any additional penetration of water. Please submit to this office an inspection report prepared by a Licensed Design Professional. Said report should include all findings with regard to the dwelling and a scope of remedial work needed."

19. A copy of the Westbury result was forwarded to Chase by Simms. To date no defendant has done anything to complete the repairs to 624 Powells.

20. By letter to Simms dated May 2, 2012, Tower states: "In an effort to provide quality claim service and ongoing communications with our policyholders, we are notifying you that the reason your claim has not been concluded is our need for further information. We will continue to notify you of our position until your claim has been concluded. Please be advised of the following: Pursuant to your recent request, attached is a page from our builder's report regarding the roof allowances made for your building claim. It would be appreciated if you would refer to our file number when corresponding." The attached page from the builder's report from CJ Rubino dated September 25, 2008, which Tower refers to, identifies the roof and states: "REPLACE 2" X 6" ROOF RAFTERS, REPLACE 2" X 8" RIDGE MEMBER, REPLACE 2" X 6" COLLAR TIES, JACK AND SHORE AS REQUIRED    REPLACE PLYWOOD ROOF SHEATHING    REPLACE ASPHALT SHINGLE ROOFING AND FLASHING    REPLACE VENT STACK AND FLASHING    REPLACE ATTIC VENT AND WIRING    Room Totals: GENERAL 14,422.50."

21. To date although Tower declared the claim is not concluded, Tower has not identified and adjusted the Simms claim to include the additional items identified by Assurant Property, and Westbury, as necessary to the completion of repairs and restoration to 624 Powells; which

8

items were not included in the damages assessments in furtherance of earlier reports of adjustments regarding the Simms claim in connection with the fire damages to 624 Powells.

## FOR A FIRST CAUSE OF ACTION:

22. At the time of the fire and ensuing damages to 624 Powells, Simms had a policy of insurance and contract of insurance with Tower.

23. Following the fire and the Simms claim to Tower for insurance relief under the policy of insurance through Tower's agent Morant, Tower as part of its adjustment processes, upon information and belief, engaged the services of defendants, Assurant, MSW Adjustment, Affiliated Adjustment, Assurant Property, and CJ Rubino, to assess the Simms claim(s) and adjust the damages to 624 Powells in furtherance of the fire, and Simms's claims for relief further to the policy of insurance with Tower through Tower's agent Morant.

24. Simms played no role in the claims adjustment process, but permitted and facilitated access to 624 Powells to Tower's personnel, and other defendants in furtherance of Tower's claim adjustment processes.

25. Based upon the determinations by Tower, Tower settled on the amounts required to be paid under the policy of insurance to repair and restore 624 Powells. Tower, upon information and belief, based its payment upon the alleged itemized findings made by Tower as a consequence of Tower's adjustment processes, and those sums of money were paid to defendant Chase by Tower. Chase in turn controlled the release of the insurance funds from Tower, and released portions of the insurance funds based upon determinations by Chase that the repair and restorative work on 624 Powells was progressing to the satisfaction of Chase.

26. Even though, as it was later revealed, Tower's claim adjustments were not thorough the policies and actions by Chase in connection with its control of the insurance funds deposited to

9

Chase by Tower, delayed and jeopardized the completion of the work to be done based upon the itemizations by Tower, because Chase while adhering to its control of the funds, and its release of the funds based solely upon determinations by Chase that work could proceed to an additional phase, Chase made no arrangements with material(s) and equipment suppliers for the purchase and delivery of materials necessary to the completion of the repairs and restorations detailed in Tower's claim adjustments; or to secure and protect 624 Powells from the elements pending Chase's determination as to whether the work thus far was satisfactory to Chase, and were in compliance with Chase's inspection(s) report(s). These failures and refusals by Chase to facilitate the completion of repairs and/or interim sealing of 624 Powells from the weather elements by paying and/or arranging for purchase and delivery of supplies to be used by the contractor, were causes in fact of non-completion of the repairs and restorations to 624 Powells.

27. Due to inspection report(s) observations to Simms by Westbury, Simms made further inquiries to Tower alerting Tower to the absence of critical structural exclusions from its assessment and claim adjustments for items such as damage to the roof beams; and surface charring to roof beams not further damaged by the fire.

28. Tower then engaged in further inspection(s) and assessments of 624 Powells, but has not made any further determinations regarding the failure of Tower to have included such critical itemizations in its initial claim investigations and assessments; and Tower as well has not made any additional payments on the Simms claim(s).

29. Therefore, Simms hereby makes claim for damages as against Tower its agents, its employees and assigns due to its breach of its insurance obligations to Simms pursuant to its policy of insurance with Simms for a sum of money to be determined at a trial of this action.

THIS PORTION IS INTENTIONALLY LEFT BLANK.

## FOR A SECOND CAUSE OF ACTION:

30. Simms hereby repeats the allegations in paragraphs 1 through 29 hereto.

31. Simms and Tower were parties to a contract and policy of insurance.

32. Tower acted in a manner that, although not expressly forbidden by any contractual provision, deprives Simms of all of the rights and benefits pursuant to the policy of insurance. Tower became aware that its initial inspections were not inclusive of all the damages to the Simms home, and that as a consequence the Simms claim ought to have been expanded by Tower to include the additional findings made by Tower. Tower, however, did not modify its claim processes to include the additional items of repairs brought to Tower's attention by Tower's additional inspections. As a consequence, the Simms home is now in a worse condition than its condition shortly following the fire.

33. The implied promise/covenant by Tower to Simms is not contrary to any express provision in the contract; and the breach of this covenant/promise Simms complains about is not a breach of an express provision in the contract and policy of insurance.

34. Therefore, Simms makes claim as against Tower, its agents, employees and assigns for its breach of its implied covenant of good faith and fair dealing against Simms, and for an award of damages in favor of Simms to be determined at a trial of this action.

## FOR A THIRD CAUSE OF ACTION:

35. Simms hereby repeats the allegations in paragraphs 1 through 34 of the Complaint hereto.

36. Chase as the mortgagee regarding 624 Powells, required that all sums of money as insurance proceeds paid by Tower in furtherance of the Simms insurance policy and claim be paid to Chase, and that such sums be retained by Chase within its exclusive control. That Chase by its policy and practice made all determinations with respect to the release of any/all of the

11

insurance funds based solely upon the judgment of Chase. Chase, however, did not and refused to make payments for and to secure hardware and other supplies necessary for the expeditious completion of the repairs and restoration of 624 Powells. As a consequence of the policy and acts of Chase much needed materials to be utilized in the completion of the repairs, as well as the securing and protection of 624 Powells while the repairs were being completed, could not be obtained by the building contractor. Such conduct by Chase was a major factor in the restorative repairs not being completed at 624 Powells as well as the occurrences of damage to 624 Powells because 624 Powells was not protected from the weather elements.

37. As a consequence of the policy and conduct of Chase as stated herein Simms was not able to regain residence possession of her home, and has been forced to obtain rental living accommodations all to Simms's expense.

38. That Chase owed a duty of care to Simms because Chase required that Chase take complete control of the insurance funds, and would only release any funds towards the completion and rehabilitation of the Simms home provided Chase was satisfied to do so. Chase, however, did not release the funds as required. Chase did not by way of its sole control of the insurance proceeds act to protect the Simms home from the elements by allocating expenditures for materials in a timely and responsible manner.

39. Chase also did not communicate to Tower about the existence of additional conditions of required repair, which Chase by the required inspections engaged in by Chase as a condition to the release of any funds by Chase, ought to have identified and reported to Tower, its agents, and assigns. The delays, refusals, and failures to act by Chase were causes in fact of the incompletion of the repairs and restoration of the Simms home; and has as well exacerbated the extent of the damages to the Simms home.

12

40. That Chase breached its duty of care to Simms as a consequence of the control of the insurance proceeds Chase adopted and required, along with Chase's further requirement that Chase perform assessment inspections of 624 Powells before the release of any of the insurance proceeds by Chase.

41. The breach of these duties of care owed to Simms by Chase were the proximate cause of damages to Simms, and the extent of damages Simms suffered as a consequence of the conduct of Chase complained about herein includes the out of pocket sums expended by Simms as payment for alternative living space rental, as well as the accumulation of mortgage payments accrued to the Simms mortgage account by Chase while Simms was unable to occupy her home as complained about herein.

42. Therefore, Simms suffered damages in an amount to be determined at the trial of this action.

## FOR A FOURTH CAUSE OF ACTION:

43. Simms hereby repeats the allegations in paragraphs 1 through 42 of the Complaint hereto.

44. Chase knew or had to have known that the non-completion of the repairs and restorations to the Simms home would render Simms homeless, with the consequences that Simms would have to obtain alternative living accommodations. That the failures of Chase to adequately and timely release the insurance proceeds as alleged herein, were with the deliberate objective to deprive Simms of resumption of living accommodation access to the Simms home. That Chase engaged in this deliberate and intended course of conduct to ensure the eventuality that Simms could not return to her home.

THIS PORTION IS INTENTIONALLY LEFT BLANK

45. That the conduct of Chase complained about herein is outrageous, and continues to be in disregard of a substantial probability of causing severe emotional distress to Simms. That but for the course of conduct by Chase complained about herein the non-completion of the repairs to the Simms home would not have occurred; and the exacerbation of the damages to the Simms home caused by the unprotected exposure of the home to the weather elements would not have occurred. That as a consequence of the course of conduct by Chase complained about herein, Simms is made to suffer severe emotional distress.

46. Therefore, Simms suffers damages as a consequence of emotional distress brought about by the course of conduct of Chase, in an award to be determined at the trial of this action.

WHEREFORE, plaintiff demands judgment against defendants by joint and several liability as follows:

A. On the First Cause of Action for damages in an amount to be determined at the trial of this action.

B. On the Second Cause of Action for damages in an amount to be determined at the trial of this action.

C. On the Third Cause of Action for damages in an amount to be determined at the trial of this action.

D. On the Fourth Cause of Action for damages in an amount to be determined at the trial of this action.

E. And for such other relief as the court deems proper.

THIS PORTION IS INTENTIONALLY LEFT BLANK

Dated: Brooklyn, New York
March 26, 2016

                                          _____
                                          Frank Wharton
                                          Attorney for Plaintiff
                                          Hyacinth Simms
                                  One Pierrepont Plaza, Floor 12
                                    300 Cadman Plaza West
                                       Brooklyn, NY 11201
                                       Tel: 718-941-9094
                                       Cell: 908-380-0237
                                       fwharton@msn.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------- X
HYACINTH SIMMS                                    **Index No.**
      Plaintiff

    -against-

JP MORGAN CHASE BANK et al.
      Defendants
-------------------------------------------------------X

## SUMMONS & COMPLAINT

Frank Wharton, an attorney licensed to practice in the State of New York, hereby certifies that to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers or the contentions herein are not frivolous as defined in subsection (c) of section 130.1-1

_____
Frank Wharton

          Frank Wharton
        Attorney for Plaintiff
         Hyacinth Simms
    One Pierrepont Plaza, Floor 12
     300 Cadman Plaza West
       Brooklyn, NY 11201
       Tel: 718-941-9094
      Cell: 908-380-0237
      fwharton@msn.com