UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X **Case No. 23-40070-NHL**

IN RE:

     **HYACINTH SIMMS**

        Debtor,

-------------------------------------------------------------------------------X **Adv. Pro. No.**

**HYACINTH SIMMS,**

        Plaintiff,

v.

**JP MORGAN CHASE BANK, TOWER GROUP, INC.,
MORANT INSURANCE AGENCY INC.,
AFFILIATED ADJUSTMENT GROUP LTD.,
ASSURANT PROPERTY ADVANTAGE** *A/K/A*
**ASSURANT SPECIALITY PROPERTY'S LENDING,
SOLUTIONS GROUP, C.J. RUBINO & COMPANY, INC.,
MSW ADJCSTMENT GROUP, INC.,
DG CUSTOM BUILT HOMES & REMODELING,**

        Defendants.
-------------------------------------------------------------------------------X

**COMPLAINT & OBJECTON
TO
<u>CHASE PROOF OF CLAIM</u>**

Hyacinth Simms, the Plaintiff-Debtor (Plaintiff) through her undersigned counsel complaint of the defendants JP Morgan Chase Bank, Tower Group, Inc., Morant Insurance Agency inc., Affiliated Adjustment Group Ltd., Assurant Property Advantage, aka Assurant Specialty Property's Lending, Solutions Group, CJ Rubino & Company, Inc., MSW Adjustment Group, Inc., DG Custom Built Homes & Remodeling (collectively the "Defendants") alleges as follows:

1

## NATURE OF THE ACTION

This complaint is for specific performance and damages against the defendants. In August of 2008, the Plaintiff's house (624 Powells Lane, Westbury, NY 11590) (the "House") was severely damaged owing to an electrical fire. The House had insurance against such damages. Plaintiff informed the mortgagee and the other insurance related parties. Perforce, Ms. Simms was homeless, and she had to move to a rental space pending the restoration undertaken by the Defendants. For one year, the rent was paid by the insurance company and thereafter Ms. Simms was left at her own to pay for rent. The Plaintiff thereafter had to pay for the rent ($3,200) and utilities besides her mortgage obligations. The interim lodging was supposed to be temporary pursuant to the underlying contract and indemnities, pending the renovation of the House. The House was not renovated in conformity with municipal code and to allow occupancy. Till date, the Defendants have not addressed this pressing issue, rather the mortgagee has moved to foreclose on the House. The Defendants breached the agreement and resulting in damage to the Plaintiff monetarily and emotionally. The Plaintiff could not afford rent for long, she was forced to move to mixed use property in Brooklyn. A lawsuit was filed in 2016 with the Supreme Court, County of Nassau, against the Defendants for damages, however same was dismissed in 2019 for lack of prosecution without consent and knowledge of the Plaintiff. The Plaintiff commences this action for specific performance and damages. Defendants must complete the renovation fit enough for decent habitation and be accountable for the damages.

## PARTIES

**Plaintiff**

1. Hyancinth Simms is now a resident of Kings County, Brooklyn, New York. She is

the owner of the House, a residential property located at 624 Powells Lane, Westbury, NY 11590).

**Defendants**

2. Defendant, JP Morgan Chase Bank ("Chase"), is a banking corporation authorized to conduct business in the State of New York. Chase is the mortgagee in connection with a mortgage financing transaction between the Plaintiff and Chase; and Chase was the mortgagee at the time of the fire at the House in August 2008. In furtherance of its position as mortgagee, Chase required that Chase's Insurance Claim Procedures for the processing and handling of fire claims must be adhered to in connection with the Plaintiff Home Mortgage Loan #0060267218.

3. Defendant, Tower Group, Inc. ("Tower"), is an insurance company duly authorized to conduct business in the State of New York. Plaintiff held a policy of insurance covering the House with a policy period of September 20, 2007, to September 20, 2008. The Policy No. is HOP 2125321. Following the fire damages to the House, Plaintiff made insurance claims to Tower based upon the Plaintiff policy of insurance with Tower.

4. Defendant, Morant Insurance Agency Inc. ("Morant"), is an insurance agent/agency duly authorized to conduct business in the State of New York. Morant is a necessary party to this action because, upon information and belief, Morant is an agent/agency for Tower, and the Plaintiff obtained the policy of insurance from Tower by Morant.

5. Defendant, Affiliated Adjustment Group Ltd. ("Affiliated Adjustment"), is a corporation duly authorized to conduct business in the State of New York. Affiliated Adjustment is a necessary party to this action because, upon information and belief, Affiliated Adjustment was retained by Tower to provide claim adjustment services to Tower in connection with the fire damages to the House.

6. Defendant, Assurant Property Advantage a/k/a Assurant Specialty Property's Lending

Solutions Group ("Assurant") is engaged in the business of providing property preservation, restoration, and inspection services to residential mortgage servicers and lenders in the State of New York. Upon information and belief, the service(s) provided by Assurant in connection with this case involved inspection of 624 Powells to ensure that the investments of the homeowner and servicer are protected prior to release of insurance funds during the claim repair process. Assurant is a necessary party to this action because, upon information and belief, the services of Assurant were retained by Chase and/or Tower in connection with the processing of the Plaintiff claim regarding the damages and restoration of the House. To that end Assurant generated an itemization and estimate of the repairs and work to be done at the House. Upon information and belief, the payment to Chase by Tower of the sums necessary to complete the restoration to the House was paid in reliance upon the report by Assurant.

7. Defendant, C. J. Rubino & Company, Inc. ("CJ Rubino"), is engaged in real property fire restoration including estimating, appraisals, restorations, and general contracting. CJ Rubino is a necessary party to this action because, upon information and belief, the services of CJ Rubino were retained by Chase and/or Tower in connection with the processing of the Plaintiff's claim regarding the damages and restoration of the House. To that end CJ Rubino generated an itemization and estimate of the repairs and work to be done at the House.

8. Defendant, MSW Adjustment Group, Ltd ("MSW") is a corporation authorized to conduct business in the State of New York. MSW is a necessary party to this action because MSW completed an inspection and submitted an adjustment report to Tower and/or Chase

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(C), (O).

10. This Court has personal jurisdiction over each of the Defendants under Bankruptcy Rule 7004(f).

11. This Court has personal jurisdiction over each of the Defendants under N.Y. C.P.L.R. §§ 301 and 302 because Plaintiff's claims arise from acts by Defendants, in person or through agents, transacting business within New York, committing tortious acts within New York, and/or committing tortious acts causing injury to persons or property within New York. A substantial part of the acts or omissions committed by each of the Defendants that give rise to the claims asserted herein occurred in New York.

12. Venue in this district is proper pursuant to 28 U.S.C. §§ 1409(a) and (c) because this Adversary Proceeding arises in or is related to the underlying Chapter 13 case.

## FACTUAL BACKGROUND

13. On the fateful day, August 22, 2008, the Plaintiff's House was extensively burnt, resulting in the Plaintiff and her family ouster from the House. She moved to rental space, however the insurance company did not pay for the rental accommodation for more than a year. The Defendants meanwhile were supposed to renovate/reconstruct the House, so that the Plaintiff could move into the House. This did not happen in time. And has not happened since then resulting in permanent deprivation of the House. Further instead of coming to the contractual rescue Chase commenced a foreclosure proceeding against the Plaintiff.

14. In furtherance of its position as mortgagee, Chase required that Chase's Insurance Claim Procedures for the processing and handling of fire claims must be adhered to in connection with the Plaintiff Home Mortgage Loan #0060267218. By a Chase letter to Simms dated April 5, 2011, Chase delineated and acted thereby to explain Chase's process for handling insurance claims by its Loss Draft Procedures Process ("loss draft process"). The loss draft process is a process by which Chase required and retained control of the processes in connection with Chase's acquisition and then distribution of insurance claim funds. The loss draft process includes oversight by Chase as to the acceptability of the site work, and installment payments to contractors and suppliers of the insurance claim proceeds received by Chase from the Simms insurance carrier, by manner and methods satisfactory to Chase solely; and which insurance proceeds Chase retained possession and control of. By its loss draft processes, Chase undertook as the lien holder in possession of the insurance proceeds, to monitor the repair process and manage the disbursement of the insurance funds. Attached here is a copy of that April 5, 2011, Chase letter with its Loss Draft Procedures Process and Required Documents statements attached and included thereto. **Ex. A.**

15. Because the insurance claim in connection with this action is in excess of $20,000 Chase required of plaintiff the following procedures regarding plaintiffs fire insurance claim and Chase's handling of the insurance claim check from plaintiff's insurance carrier: Chase required that plaintiff send the indorsed insurance claim check to Chase, which Chase would then deposit into a restricted escrow account, and release the initial disbursement of $10,000 or one third of the initial claim amount, whichever is greater, payable to all borrowers, any payees listed on the original insurance claim check, and any contractors. That ten days prior to the expected completion date of repairs plaintiff was required to contact Chase to request a property inspection. That within three business days from Chase receiving all of the following documents, Chase would

release the remaining claim funds payable to all borrowers, any payees listed on the original insurance claim check, and any contractors if applicable: a) Insurance adjuster's report or Contractor's estimate. b) Mortgagor's affidavit. c) Contractor's lien waiver, d) IRS form W-9 (when using a third party to complete the repairs). e) Property inspection results of fifty percent or more completion of repairs. That ten days prior to the expected completion date of repairs, Simms should contact Chase to request a property inspection. That within three business days of receiving property inspection results of 90-100% completion Chase will release the remaining insurance claim funds.

16. The Chase required documents were:

>**Adjuster's report or estimate:** An adjuster's report or estimate is an itemized list of damages to the property provided by the insurance company. The adjuster's report outlines the total amount allotted for each portion of the claim settlement.
>
>**Contractor's estimate and/or worksheet:** a contractor's estimate is the written proposal that the contractor will provide itemizing the total cost to repair plaintiffs home .
>
>**Mortgagor's Affidavit:** The mortgagor's affidavit is a document, which must be signed by at least one borrower on the loan that acknowledges plaintiffs intent to repair the damaged property. This document also confirms that all bills will be paid in conjunction with the repairs to the property, and that there is no possibility that a lien could be placed on the property due to unpaid debt for labor or materials. This form must be notarized prior to submitting it to Chase.

**Conditional Waiver of Lien:** The conditional waiver of lien is completed by the contractor confirming that the contractor will waive any claims of lien conditional upon receipt of payment in full for their labor and materials.

**IRS Form W9:** The Internal Revenue Service (IRS) regulations require mortgage companies to report payment of insurance proceeds to contractors. As a result, Chase requires a completed W-9 form prior to issuing disbursements including your contractor as a payee. If you are self-contracting, this form is not required.

17. After the fire, following the tender of the insurance payment to Chase by Tower, the services of DG Custom Built was obtained to repair and restore the House pursuant to the itemization and appraisal from CJ Rubino. However, the completion of the restoration work by DG Custom Built was hindered and delayed by Chase who engaged in the practice of release of the insurance funds by installments, and only upon and following an inspection by Chase regarding the progress of the restoration work. So that restoration was delayed on account of Chase handling of the funds, and the completion of the work was hindered due to the difficulties Chase engendered by its inefficient practices regarding Chase's inspection and release of the required funds. As a consequence, damage to the House was exacerbated by the unduly lengthy exposure of the House to the elements.

18. Upon information and belief, Assurant Property was contracted by Tower and/or Chase to inspect the House following request(s) by the Plaintiff for an inspection by Chase. In furtherance of an inspection, Assurant Property issued a report stating that the work was 70% completed. The Assurant Property inspection report also detailed the required completion of damages and work to be performed. The Assurant Property report, however, included critical items it states were required for completion that were not included and itemized in any prior appraisal and work to be

done itemization upon which Tower might have relied. The Assurant Property report directed the replacement of roof beams, the pull down of walls that the contractor left old insulation within, replace header on the first floor, first contractor's work needs to be redone, old insulation still showing fire damage, first floor wall is built on top of another wall, and beams in the roof are still charred.

19. As a consequence of the Assurant Report Chase did not release the balance of funds. In any event, however, the amount of funds allocated by Tower and paid to Chase were insufficient to cover the repairs the Chase inspection by Assurant Property demanded. This is so because important items such as the replacement of roof beams were not included in the initial reports which were done prior to the payment of insurance proceeds to Chase by Tower; and, upon information and belief, were not contemplated by Tower in its aggregation of the sums required to be paid in order to repair and restore the House following the fire.

20. On July 3, 2013, the Village of Westbury ("Westbury") inspected the House and issued an inspection result dated August 26, 2013. The Westbury result found that: "l.) Due to water penetration of the structure all drywall should be removed and all framing members inspected by any additional penetration of water. Please submit to this office an inspection report prepared by a Licensed Design Professional. Said report should include all findings with regard to the dwelling and a scope of remedial work needed."

21. A copy of the Westbury result was forwarded to Chase by the Plaintiff. To date no defendant has done anything to complete the repairs to the House.

22. By letter to the Plaintiff, dated May 2, 2012, Tower states: "In an effort to provide quality claim service and ongoing communications with our policyholders, we are notifying you that the reason your claim has not been concluded is our need for further information. We will continue to

notify you of our position until your claim has been concluded. Please be advised of the following: Pursuant to your recent request, attached is a page from our builder's report regarding the roof allowances made for your building claim. It would be appreciated if you would refer to our file number when corresponding." The attached page from the builder's report from CJ Rubino dated September 25, 2008, which Tower refers to, identifies the roof and states:

> "REPLACE 2" X 6" ROOF RAFTERS, REPLACE 2" X 8" RIDGE
> MEMBER, REPLACE 2"
> X 6" COLLAR TIES, JACK AND SHORE AS REQUIRED
> REPLACE PLYWOOD ROOF SHEATHING REPLACE ASPHALT
> SHINGLE ROOFING AND FLASHING REPLACE VENT STACK
> AND FLASHING REPLACE ATTIC VENT AND WIRING Room
> Totals: GENERAL 14,422.50."

23. To date although Tower declared the claim is not concluded, Tower has not identified and adjusted the Plaintiffs claim to include the additional items identified by Assurant Property, and Westbury, as necessary to the completion of repairs and restoration to the House, which items were not included in the damages assessments in furtherance of earlier reports of adjustments regarding the Plaintiff's claim in connection with the fire damages to the House.

24. The House continues to be ignored, abandoned by Chase and its team that was suppose to supervise, or with diligence conduct or oversee renovation.

25. On or about December 19, 2019, New York Real Estate Finance Division, of Department of Financial Services concerned about the state of affairs and condition of the House notified and warned Chase,

> Effective December 20, 2016, Sections 1308 and 1310 of the New York
> Real Properly Actions and Proceedings Law {the "Abandoned Property
> Relief Act"), require mortgagees and their servlcers to assume certain
> responsibilities. in connection with vacant and abandoned residential
> properties securing mortgage loans in their portfolios. Among these
> responsibilities Is the duly to register, secure and maintain vacant and
> abandoned properties. Failure to abide by these requirements Is
> punishable by a fine of up to $500 pet day.
> On January 8, 2019, Chat1e Manhattan Mortgage Corporation registered
> the property located at 624 Powells Lane, Westbury, NY 11590 (the

"Property") as being vacant and abandoned with the Department of Financiai Services (the "Department"). The registry number assigned to the Property ls NYS4862348. An inspection conducted by the Department on December 19, 2019 indicates that Chase Manhattan Mortgage Corporation, as the servicer and/or mortgagee, has failed to comply with one of the legal obligations noted above. In particular, the following violations have been
Identified:

1. Gutter hanging off
2. Open holes in roof overhang In several spots
3. Debris in yard
4. See attached photos

We request that you investigate and respond to the Department regarding the Issues noted In the complaint no later than fourteen (14} days from the date of this letter. The following documents and Information should be provided In support of your response:

1. Pictures (or other documentation) showing all remedial work performed; and
2. The last three months of inspection reports for the Property.

If you have any questions regarding this matter, please feel free to contact me at 212-709-3807 or Bonnle.Flllp@dfs.ny.gov, and please be sure to refer to the properly address listed above In any telephone Inquiry or correspondence.        Sincerely,
/s/  B. Flip, Consumer Representative1
Mortgage Assistance Unit, Real Estate
Finance Division

26.     Chase continued with its dishonest conduct towards the Plaintiff. It did not release the

funds that which were necessary for the renovation. On or about August 31, 2020, Chase wrote

to the Plaintiff the following letter:

> **We're here to help with your insurance claim**
>
> **Account: 60267218**
> **Property Address: 624 Powells Lane**
> **Westbury, NY 11590**
>
> **Dear Hyancinth Simms:**
> **You have a balance of insurance claim funds being held to repair your home. Please visit:**
> **InsuranceClaimCheck.com/Chase to review the status of your funds or calls at 1-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.**
>
> **If you have questions, please call us. We're here to help.**
> **Sincerely,**

**Chase
1-866-742-1461
1-678-475-8899 Fax: it's free from any Chase branch.**

27. The Plaintiff called, but they did not have any information about the ground realities. Those responsible for answering the calls had no answer.

28. Plaintiff had attempted to salvage her dire situation in and around 2011, she applied to Chase for loan modification which qualified. She reminded Chase department overlooking loan modification that her house was being renovated by Chase and she was living in a rental space.

29. Chase denied her hardship letter and denied the loan modification because Chase stated that the Plaintiff was not living in her house, thus did not qualify under their guidelines.

30. The Plaintiff had not defaulted in her obligation at the time the House was damaged by fire. And had not defaulted for another year. Chase had more than enough time to see the completion of the renovation. Chase by its acts and omission have resulted in claims of breach of contract, breach of implied covenant of good faith and fair dealing, conversion, Unjust Enrichment, Negligent Servicing and New York state unfair and deceptive acts laws.

**FIRST CAUSE OF ACTION
(Against Towers and its agents)**

31. At the time of the fire and ensuing damages to the House, the Plaintiff had a policy of insurance and contract of insurance with Tower.

32. Following the fire and the Plaintiff's claim to Tower for insurance relief under the policy of insurance through Tower's agent Morant, Tower as part of its adjustment processes, upon information and belief, engaged the services of defendants, Assurant, MSW Adjustment, Affiliated Adjustment, Assurant Property, and CJ Rubino, to assess the Simms claim(s) and adjust the damages to the House in furtherance of the fire, and the Plaintiff's claims for relief further to the policy of insurance with Tower through Tower's agent Morant.

33. The Plaintiff played no role in the claim's adjustment process, but permitted and facilitated Access to her House to Tower's personnel, and other defendants in furtherance of Tower's claim adjustment processes.

34. Based upon the determinations by Tower, Tower settled on the amounts required to be paid under the policy of insurance to repair and restore the House. Tower, upon information and belief, based its payment upon the alleged itemized findings made by Tower as a consequence of Tower's adjustment processes, and those sums of money were paid to defendant Chase by Tower. Chase in turn controlled the release of the insurance funds from Tower, and released portions of the insurance funds based upon determinations by Chase that the repair and restorative work on the House was progressing to the satisfaction of Chase.

35. Even though, as it was later revealed, Tower's claim adjustments were not thorough, the policies and actions by Chase in connection with its control of the insurance funds deposited to Chase by Tower, delayed and jeopardized the completion of the work to be done based upon the itemizations by Tower, because Chase while adhering to its control of the funds, and its release of the funds based solely upon determinations by Chase that work could proceed to an additional phase, Chase made no arrangements with material(s) and equipment suppliers for the purchase and delivery of materials necessary to the completion of the repairs and restorations detailed in Tower's claim adjustments; or to secure and protect the Property from the elements pending Chase's determination as to whether the work thus far was satisfactory to Chase and were in compliance with Chase's inspection(s) report(s). These failures and refusals by Chase to facilitate the completion of repairs and/or interim sealing of the House from the weather elements by paying and/or arranging for purchase and delivery of supplies to be used by the contractor, were causes in fact of non-completion of the repairs and restorations to the House.

36. Due to inspection report(s) observations to the Plaintiff by Westbury, the Plaintiff made further inquiries to Tower alerting Tower to the absence of critical structural exclusions from its assessment and claim adjustments for items such as damage to the roof beams; and surface charring to roof beams not further damaged by the fire.

37. Tower then engaged in further inspection(s) and assessments of the House, but has not made any further determinations regarding the failure of Tower to have included such critical itemizations in its initial claim investigations and assessments; and Tower as well has not made any additional payments on the Plaintiff's claim(s).

38. Therefore, the Plaintiff hereby makes claim for damages as against Tower its agents, its employees and assigns due to its breach of its insurance obligations to the Plaintiff pursuant to its policy of insurance with the Plaintiff for a sum of money to be determined at a trial of this action.

## SECOND CAUSE OF ACTION
### (Against Tower and its agents)

39  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 38 above and incorporates them herein by this reference.

40. The Plaintiff and defendant Tower were parties to a contract and policy of insurance.

41. Tower acted in a manner that, although not expressly forbidden by any contractual provision, deprives the Plaintiff of all of the rights and benefits pursuant to the policy of insurance. Tower became aware that its initial inspections were not inclusive of all the damages to the Plaintiff's home, and that as a consequence the Plaintiff's claim ought to have been expanded by Tower to include the additional findings made by Tower. Tower, however, did not modify its claim processes to include the additional items of repairs brought to Tower's attention by Tower's additional inspections. As a consequence, the Plaintiff's home is now in a worse condition than its condition shortly following the fire.

42. The implied promise/covenant by Tower to the Plaintiff is not contrary to any express provision in the contract; and the breach of this covenant/promise the Plaintiff complains about is not a breach of an express provision in the contract and policy of insurance.

43. Therefore, the Plaintiff makes claim as against Tower, its agents, employees and assigns for its breach of its implied covenant of good faith and fair dealing against the Plaintiff, and for an award of damages in favor of the Plaintiff to be determined at a trial of this action.

## THIRD CAUSE OF ACTION
### (Against Chase)

44. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 above and incorporates them herein by this reference.

45. Chase as the mortgagee regarding the House, required that all sums of money as insurance proceeds paid by Tower in furtherance of the Plaintiff's insurance policy and claim be paid to Chase, and that such sums be retained by Chase within its exclusive control. That Chase by its policy and practice made all determinations with respect to the release of any/all of the insurance funds based solely upon the judgment of Chase. Chase, however, did not and refused to make payments for and to secure hardware and other supplies necessary for the expeditious completion of the repairs and restoration of the House. As a consequence of the policy and acts of Chase much needed materials to be utilized in the completion of the repairs, as well as the securing and protection of the House while the repairs were being completed, could not be obtained by the building contractor. Such conduct by Chase was a major factor in the restorative repairs not being completed at the House as well as the occurrences of damage to the House because House was not protected from the weather elements.

46. As a consequence of the policy and conduct of Chase as stated herein the Plaintiff was not able to regain residence possession of her home, and has been forced to obtain rental living accommodations all to the Plaintiff's expense.

47. That Chase owed a duty of care to the Plaintiff because Chase required that Chase take complete control of the insurance funds, and would only release any funds towards the completion and rehabilitation of the Plaintiff home provided Chase was satisfied to do so. Chase, however, did not release the funds as required. Chase did not by way of its sole control of the insurance proceeds act to protect the Plaintiff's home from the elements by allocating expenditures for materials in a timely and responsible manner.

48. Chase also did not communicate to Tower about the existence of additional conditions of required repair, which Chase by the required inspections engaged in by Chase as a condition to the release of any funds by Chase, ought to have identified and reported to Tower, its agents, and assigns. The delays, refusals, and failures to act by Chase were causes in fact of the incompletion of the repairs and restoration of the Plaintiff's home; and has as well exacerbated the extent of the damages to the Plaintiff's home.

49. That Chase breached its duty of care to the Plaintiff as a consequence of the control of the insurance proceeds Chase adopted and required, along with Chase's further requirement that Chase perform assessment inspections of the House before the release of any of the insurance proceeds by Chase.

50. The breach of these duties of care owed to the Plaintiff by Chase were the proximate cause of damages to the Plaintiff and the extent of damages the Plaintiff suffered as a consequence of the conduct of Chase complained about herein includes the out of pocket sums expended by the Plaintiff as payment for alternative living space rental, as well as the accumulation of mortgage

payments accrued to the Plaintiff's mortgage account by Chase while the Plaintiff was unable to occupy her home as complained about herein.

51. Therefore, the Plaintiff suffered damages in an amount to be determined at the trial of this action.

**FOURTH CAUSE OF ACTION**
**(Against Chase)**

52. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 51 above and incorporates them herein by this reference.

53. Chase knew or had to have known that the non-completion of the repairs and restorations to the Plaintiff's home would render the Plaintiff homeless, with the consequences that the Plaintiff would have to obtain alternative living accommodations. That the failures of Chase to adequately and timely release the insurance proceeds as alleged herein, were with the deliberate objective to deprive the Plaintiff of resumption of living accommodation access to the Plaintiff's home. That Chase engaged in this deliberate and intended course of conduct to ensure the eventuality that the Plaintiff could not return to her home.

54. Chase knew or had to have known that the non-completion of the repairs and restorations to the Plaintiff's home would render the Plaintiff homeless, with the consequences that the Plaintiff would have to obtain alternative living accommodations. That the failures of Chase to adequately and timely release the insurance proceeds as alleged herein, were with the deliberate objective to deprive the Plaintiff of resumption of living accommodation access to the Plaintiff's home. That Chase engaged in this deliberate and intended course of conduct to ensure the eventuality that the Plaintiff could not return to her home.

55. That the conduct of Chase complained about herein is outrageous, and continues to be in disregard of a substantial probability of causing severe emotional distress to the Plaintiffs. That but for the course of conduct by Chase complained about herein the non-completion of the repairs

to the Plaintiff's home would not have occurred; and the exacerbation of the damages to the Plaintiff's home caused by the unprotected exposure of the home to the weather elements would not have occurred. That as a consequence of the course of conduct Chase complained about herein, the Plaintiff is made to suffer severe emotional distress.

56. Therefore, the Plaintiff suffers damages as a consequence of emotional distress brought about by the course of conduct of Chase, in an award to be determined at the trial of this action.

**FIFTH CAUSE OF ACTION**
**(Negligence – Against All Defendants)**

57. Plaintiff realleges paragraphs 1 through 56 of this complaint.

58. Defendants had a duty to use an appropriate level of skill, prudence, and diligence in discharging the duties owed to plaintiff. Defendants were required to use as much skill, prudence and diligence as members of their applicable profession commonly possess and exercise in providing professional services to plaintiff in inspection of the house, appraising the damages, the necessary renovation required to bring the house to habitable level, release of the necessary funds for purchase of the materials and supervising the work and getting the necessary repairs in time.

59. The Defendants owed a direct or a derivative duty to Plaintiff. Chase, Chase and Tower further owed plaintiff a duty of care when it conspired, aided and/or abetted and acted in conjunction with the other parties defendant such that its conduct as herein alleged went beyond the scope of what they were obligated to do. Defendants failed to exercise reasonable care, skill and diligence in taking steps towards renovating the House in a timely manner comporting with the municipal guidelines.

60. Defendants also negligently and/or intentionally misrepresented to plaintiff that her insurance funds and their diligence would be restoring the House.

61. As a proximate result of Defendants' wrongdoing alleged herein plaintiff has suffered damages of loss of use of property, emotional distress and other injuries to her mind and body, and incurred attorneys in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Court:

A. General and Compensatory damages according to the proof at trial

B. Punitive damages;

C. Recoupment in favor of Plaintiff nullifying the amount asserted by Chase;

D. Enter judgment against the defendants on all counts;

E. Award the plaintiff her costs and reasonable attorney fees jointly and severally against both defendants;

F. Prejudgment interest; and

E. Grant such other relief as may be just and proper.

Dated August 22, 2023
New York New York

Dahiya Law Offices, LLC
*Attorneys for the Plaintiff*

By: /s/karamvirdahiya
Karamvir Dahiya
75 Maiden Lane Suite 606
New York New York 10038
Tel: 212 766 8000